**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

JOHN GILDING, a married man,                     )   No. CV-08-2137-PHX-GMS
                                                 )
                 Plaintiff,                      )   **ORDER**
                                                 )
vs.                                              )
                                                 )
                                                 )
JOHN S. CARR, et. al.,                           )
                                                 )
                 Defendants.                     )
                                                 )
_____         )

        Pending before the Court are: (1) Plaintiff's Motion to Remand to State Court (Dkt. # 10) and (2) the First Motion to Dismiss Case of Defendant National Air Traffic Controller's Association, AFL-CIO ("NATCA") (Dkt. # 15), as well as the various Joinders in those Motions and the Responses and Replies thereto.  After oral argument, the parties also filed supplemental pleadings, responses, and replies. The two motions present the similar issue of whether Plaintiff's claims against Defendants are completely preempted by the Personnel Management System ("PMS") adopted by the Federal Aviation Administration ("FAA") or the  provisions of the Civil Service Reform Act ("CSRA") that are applicable to the PMS. Under the facts as alleged here, and for the reasons explained below, Plaintiff's claims are not completely preempted by either the CSRA or the PMS.  Therefore, Plaintiff's Motion to Remand to State Court is granted and Defendant NATCA's Motion to Dismiss is denied as moot.

**BACKGROUND**

On October 27, 2008, Plaintiff John Gilding filed his Third Amended Complaint in Maricopa County Superior Court.  In that Complaint, among other things, he added NATCA as a party defendant to his pre-existing lawsuit against the individual Defendants.  The Complaint asserted no federal claims.

In the Complaint, Gilding, a management employee with the FAA who had been assigned as the Support Manager for Training in Phoenix, alleges that Defendants publicly defamed him on Defendant Carr's website blog.  Gilding alleges they did so by stating that Gilding caused an FAA employee under his supervision to commit suicide, threatened and intimidated an FAA trainee to the point that the trainee "decided to change career fields," created an unlawful and brutal culture and work environment, and performed his work in a dishonest, unprofessional, illegal, and unethical fashion.  Defendants encouraged blog readers to contact the FAA and register their discontent with Plaintiff and his assignment to Phoenix.

The Complaint further alleges that Defendants Johnston and Palmer, air traffic controllers assigned to Phoenix and local officers of NATCA, wrongfully obtained Gilding's confidential personnel files and forwarded them to Defendant Marks, an air traffic controller assigned to San Diego.  Marks, in turn, subsequently transferred the files to Defendant Carr, who Marks and Johnston had solicited to run a "hit piece" on Gilding on his website.  Carr is a former FAA employee who operated the blog which he used to publicly criticize the FAA and others involved in the aviation industry.  Gilding alleges that in composing and publishing the blog entries pertaining to him, Carr and Marks, with the cooperation and assistance of Johnston and Palmer, "intentionally took select information . . . out of context, using fallacy of composition and innuendo, in order to defame and harm plaintiff and place him in a false light."  The Complaint further alleges that Johnston, Palmer, Marks, and Carr, in their individual capacities, and Johnston and Palmer in their capacity as union officers, intended to "damage plaintiff's reputation, cause him emotional distress, and tortiously

1    interfere with his current FAA employment as well as future employment and employment
2    prospects."

3           The Complaint asserts that, as a result of the alleged defamation, Gilding's immediate
4    supervisor placed Gilding on administrative leave and removed him from the position as
5    Support Manager for Training.  The complaint further alleges that Plaintiff suffered damage
6    to his public reputation and accompanying physical and emotional damage, for which he
7    obtained appropriate medical treatment.

8           Prior to filing his Complaint, Plaintiff inquired with the FAA as to whether he had any
9    administrative remedies against Defendants through either the PMS system or the
10   NATCA/FAA collective bargaining agreement.  He was told that while he may have
11   administrative recourse against the FAA for the agency's decision to remove him from his
12   Phoenix position, there existed no procedure by which he could grieve the conduct of his co-
13   employees and other Defendants.

14          Plaintiff subsequently filed his Complaint against Defendants in Maricopa County
15   Superior Court.  The Complaint did not name the FAA or any of its employees involved in
16   the decision to remove Gilding from his managerial position.  After Plaintiff named NATCA
17   as a Defendant, NATCA filed its notice of removal.  Gilding filed a motion to remand
18   asserting both that the first-served defendant rule barred NATCA from attempting removal
19   to federal court[1] and that his state law claims were not completely preempted by federal law.
20   NATCA subsequently filed a motion to dismiss, arguing that the claims in Gilding's lawsuit
21   were completely preempted by federal administrative law, and thus that the Complaint was
22   both appropriately removed and should be dismissed.

23                                        **ANALYSIS**

24          Under the complete preemption doctrine, a case filed in state court asserting state law
25   claims may be removed to federal court only if the party seeking removal proves: (1) that the

26

27          [1]Because the Court determines that Gilding's claims against Defendants are not
     completely preempted, there is no need for the Court to address Gilding's assertion that
28   NATCA may not now attempt to remove based on the first-served defendant rule.

plaintiff's claims are preempted by federal law, and (2) that Congress intended for the federal statute in question to "provide the exclusive cause of action for the claim asserted." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 10-11 (2003).  It is, in this case, Defendants' burden to establish complete preemption.  *Lontz v. Tharp*, 413 F.3d 435, 440-41 (4th Cir. 2005).  They have not done so.

The relationship between most federal civil service employees and their employer is regulated by the CSRA, 5 U.S.C. § 1101 *et seq.*  Among other things, the CSRA protects federal employees from being subjected to specified "prohibited personnel practices" by their government employer or its agents.  The CSRA also provides investigative and enforcement processes by which employees may seek relief from the government or its agents for such acts.

In light of the comprehensive administrative remedy provided by the CSRA through which an employee could obtain relief against the United States and/or its agents for engaging in a "prohibited personnel practice," the United States Supreme Court has declined to authorize additional common law claims brought by a federal employee against his or her federal employer or its agents.  *Bush v. Lucas*, 462 U.S. 367, 368, 385 (1984).  Since *Bush*, courts have typically declined to recognize such additional claims for recovery.

In 1996, Congress authorized the FAA to create its own personnel management system separate from the CSRA.  49 U.S.C. § 40122(g) (2007).  That legislation specified that certain of the CSRA's provisions would apply to the PMS.  Among those, the statutes pertaining to "prohibited personnel practices" and the accompanying investigative and enforcement provisions pertaining to such practices would apply to the FAA.  *Id.* § 40122(g)(2)(A) ("The provisions of title 5 shall not apply to the new personnel management system, . . . with the exception of . . . section 2302(b), relating to whistleblower

1    protection, including the provisions for investigation and enforcement as provided in chapter

2    12 of title 5.").[2]

3           In addition to the CSRA provisions that are incorporated into the PMS by statute, the

4    PMS itself further sets forth grievance procedures which, pursuant to the terms of the PMS,

5    provide the exclusive remedy by which FAA employees may bring claims against the FAA,

6    the Department of Transportation, and the United States Government.  PMS Chapter 3 ¶ 4.

7    Defendants assert that Plaintiff's claims are preempted by both the CSRA and these PMS

8    grievance provisions. The claims here, however, do not give rise to preemption.

9    **I.     The CSRA Does Not Preempt Plaintiff's Claims.**

10          In determining whether the CSRA preempts a claim, the court looks to the conduct

11   challenged in the lawsuit to determine whether it "falls within the scope of the CSRA's

12   'prohibited personnel practices.'  If it does then the lawsuit is preempted and the CSRA's

13   administrative procedures are [the employee's] only remedy." *Mangano v. United States*,

14   529 F.3d 1243, 1246 (9th Cir. 2008) (quoting *Orsay v. U.S. Dep't of Justice*, 289 F.3d 1125,

15   1128 (9th Cir. 2002)); *see also Mahtesian v. Lee*, 406 F.3d 1131, 1134 (9th Cir. 2005).

16          The CSRA further makes clear that the enumerated "personnel practices" are only

17   those that are undertaken by "any employee who has authority to take, direct others to take,

18   recommend or approve any personnel action" with respect to the plaintiff.[3]   5 U.S.C.

19   _____

20          [2]The FAA PMS is also subject to that part of the CSRA that deals with protection

21   from unfair labor practices and hence can preempt certain claims brought against unions. 49
     U.S.C. § 40122(g)(2)(C).  However, NATCA makes no argument that the claims alleged

22   against it constitute an "unfair labor practice" as regulated by the CSRA, nor does it argue
     that the NATCA/FAA collective bargaining agreement would prevent Gilding's claims here.

23

24          [3]Because 49 U.S.C. § 40122(g) specifies that the provisions of 5 U.S.C. § 2302(b)
     apply to the PMS, and because 5 U.S.C. § 2302(a) defines relevant terms necessary to the

25   application of 5 U.S.C. § 2302(b), the relevant definitions contained in 5 U.S.C. § 2302(a)
     also apply to the PMS to the extent that the PMS is subject by statute to the provisions of 5

26   U.S.C. § 2302(b).  The PMS also includes separate "prohibited personnel practices" that are
     in many respects identical to those included in 5 U.S.C. § 2302(b). *See* PMS, Introductory

27   Section, Paragraph VIII.  However, the "prohibited personnel practices" in the PMS contain

28   slight differences and added prohibitions, have no separate investigation or enforcement

§ 2302(b).  Thus, before the claim for an act is preempted by the CSRA, the act must constitute a "prohibited personnel practice" as enumerated in the statute, must be committed by an employee who has the authority to take, recommend, or approve a personnel action against the plaintiff, and it must constitute "personnel action" as defined in the statute.[4]  *See, e.g*, *Brock v. United States*, 64 F.3d 1421, 1424-25 (9th Cir. 1995) (holding that the CSRA did not preempt the plaintiff's claims for rape and sexual assault against a supervisor because rape and sexual assault do not constitute "personnel action"); *Collins v. Bender*, 195 F.3d 1076, 1079 (9th Cir. 1999) (holding that the CSRA did not preempt a claim regarding a warrantless search of a federal agent's home because the search did not constitute "personnel action"); *Bush*, 462 U.S. at 386 n.28 (holding that wiretapping, warrantless searches, or uncompensated takings constitute actions that are not "personnel actions" and hence cannot constitute a "prohibited personnel practice"); *Garvais v. Carter*, No. CV-03-0290-JLQ, 2006 WL 2228825, at *6-8 (E.D. Wash. Aug. 3, 2006) (holding that co-employees conspiring to have the plaintiff incarcerated by concocting false charges and intimidating him and his family falls outside the scope of CSRA preemption).

**A.    Defendants Actions Were Not Covered by the Scope of the CSRA.**

None of Defendants here makes out a plausible case that they were "an employee" in a position to take, direct others to take, recommend, or approve any personnel action as to Gilding.  By its plain terms, the statute requires that those it authorizes to take, recommend or approve personnel action be an "employee."  5 U.S.C. § 2302(b).  Two Defendants were clearly not  "employees."  Carr was a retired air traffic controller at the time of the events here, and NATCA is the union that represents air traffic controllers in their negotiations with

_____

mechanisms, and do not include a definition of "personnel action."

[4]The statute defines "personnel action" as any appointment, promotion, disciplinary or corrective action, detail transfer, reassignment, reinstatement, restoration, reemployment, performance evaluation, pay or benefits decision, mandatory psychiatric examination, or any other significant change in duties, responsibilities, or working conditions.  5 U.S.C. § 2302(a)(2)(A)(i)-(xi).

the FAA.  None of the other three, who were all in non-management positions with the FAA, was in a position to take, recommend, or approve any "personnel action" with respect to Gilding.  Nor do they suggest how publishing information on Carr's website about Plaintiff constitutes "personnel action" as to him.

Defendants point out that in some cases recommendations made by subordinate employees or others who are not a plaintiff's direct supervisors are nevertheless covered by the CSRA for purposes of evaluating a preemption claim.  Defendants, however, offer no case with facts similar to those presented here.

In *Mahtesian v. Lee*, 406 F.3d 1131 (9th Cir. 2005), Mahtesian's promotion within the Department of the Treasury was frustrated when one of his co-employees, Wong, allegedly made false accusations about him when she was interviewed by Treasury officials conducting a background investigation on Mahtesian, *id.* at 1133.  Mahtesian's defamation claims against Wong were nevertheless held to be preempted by the CSRA because although Wong was not Mahtesian's supervisor, Wong "was approached and queried [about Mahtesian] by appropriate authorities" when she made her supposedly defamatory statements.  *Id.* at 1134. Under these circumstances, the court determined that Wong had the authority to "recommend or not recommend" Mahtesian for employment as that term was used in the CSRA and thus that her defamation constituted a "prohibited personnel practice" for which the CSRA constituted the unique remedy.  *Id.* at 1134-35.

Defendants cite *Hall v. Clinton*, 235 F.3d 202 (4th Cir. 2000), for a similar proposition.  In *Hall*, the plaintiff, who was employed within the Executive Office of the President, complained of her demotion.  *Id.* at 203.  She brought suit against the First Lady and employees of the White House Correspondence Office whom she believed recommended her demotion.  *Id.* at 204.  At least some of Hall's claims were dismissed as being preempted by the CSRA.  *Id.*  Hall argued, however, that because neither the First Lady nor the White House Correspondence Office employees were her supervisors, her claims could not be preempted by the CSRA.  *Id.* at 205.  The court nevertheless held that under the facts of that

1   case the CSRA preempted claims against those defendants who might have lived and/or

2   worked in the White House and recommended Hall's demotion to her supervisor. *Id.* at 206.

3        To similar effect is *Sculimbrene v. Reno*, 158 F. Supp. 2d 1 (D.D.C. 2001).   In

4   *Sculimbrene*, a former FBI agent who was assigned to the White House brought claims

5   against the White House General Counsel and the FBI General Counsel. *Id.* at 1-2.  The

6   plaintiff alleged that the two general counsel, Quinn and Shapiro, had written a letter to the

7   FBI Director that had forced the plaintiff's early retirement from the FBI. *Id.* at 4.  The agent

8   brought federal law claims against Quinn and Shapiro, which the district court ultimately

9   dismissed as being barred by the CSRA, even though the two general counsel were not

10  Plaintiff's supervisors. *Id.* at 6-8.  The *Sculimbrene* court noted that a government official

11  need not be a direct supervisor of the plaintiff to have authority under the CSRA to

12  recommend personnel action as to the plaintiff:

13              Plaintiff in this case argues that he is entitled to seek remedies
                outside of the CSRA because, in his view, Quinn and Shapiro do
14              not possess the authority described in Section 2302(b).  The
                Supreme Court has already rejected this type of exclusion-based
15              argument as "implausible" and this Court must do the same.

16  *Id.* at 6.

17       In their supplemental briefs, Defendants also cite to other cases in which courts have

18  found that co-employees who allegedly defame a supervisor within the course of an

19  administratively-authorized grievance process have done so within the confines of CSRA

20  preemption.  *See, e.g.*, *Schwartz v. Int'l Fed'n of Prof'l & Technical Eng'rs*, No. 3:07-CV-

21  0978-D, 2007 WL 3196347 (N.D. Tex. Oct. 31, 2007).

22       Defendants, however, offer no reason to believe that they are similarly situated to any

23  of the defendants in those cases.  Unlike *Mahtesian*, Defendants here do not claim that they

24  published the defamatory information on the blog in response to a request by the FAA or one

25  of its supervisors that they do so.  *Sculimbrene* and *Hall* only make the same point that had

26  previously been made by the Ninth Circuit in *Orsay*, "the CSRA contains no specific

27  requirement that the employee that engaged in the prohibited personnel practice be an

28  employee of the organization that employs the employee subject to the adverse personnel

decision." 289 F.3d at 1125. Thus, appropriately placed government officials and employees have "authority to recommend personnel action" under the statute even if they are not Plaintiff's direct supervisors. For the reasons stated above, Defendants make no showing that they are such officials nor do they claim that their defamation of Plaintiff occurred while, during the course of their employment, they communicated their views about Plaintiff to someone within the FAA who had the authority to remove him.

Finally, unlike *Schwartz*, the defamatory statements Defendants allegedly made about Gilding were not made within the confines of an administrative grievance. It is true that Johnson and Palmer were alleged to be acting in their capacity as union officers in publicly defaming Plaintiff. But such defamation was not offered in the course of internal grievances, EEOC complaints, or a direct presentation of the Union's views to FAA management. Therefore, there is no basis on which to conclude that Defendants had authority by virtue of their federal employment, or their union positions, to take, direct others to take, or recommend personnel action as to Gilding. Nor is there any reason to believe that the publication of information on Carr's website constituted "personnel action" as to Gilding. Therefore, Gilding's lawsuit against Defendants is not preempted by federal law.

**B.    A Complaint is Preempted Only If It Constitutes a Prohibited Personnel Practice.**

At oral argument, and to some extent in their supplemental briefing, Defendants suggest an alternative argument. They assert that the relevant standard in a CSRA preemption analysis is not whether the plaintiff's claim arose from a "prohibited personnel action" but rather whether it "arose from his federal employment." They argue that the FAA's removal of Plaintiff from his management position sufficiently "arises from his federal employment" to require preemption. But Plaintiff has not named the FAA or any of its employees who decided to remove him from his management position as defendants in this action.

The guiding cases plainly hold that, in determining whether a claim is preempted, courts look to the conduct of the defendants against whom the complaint is brought and

1   compare it to the "prohibited personnel practices" of the CSRA.  "If the conduct that

2   Appellants challenge in this action falls within the scope of the CSRA's 'prohibited

3   personnel practices,' then the CSRA's administrative procedures are Appellant's only

4   remedy."  *Orsay*, 289 F.3d at 1128; *see also Mangano*, 529 F.3d at 1246.  Defendants cite

5   no case in which the CSRA has been held to preempt a claim against defendants who were

6   not: (1) government agencies or their employees acting in the scope of their employment, (2)

7   other government officials arguably acting within the scope of their employment, or (3)

8   government employees pursuing a valid administrative grievance process.

9         The preemption requirement that an action be based on a "prohibited personnel

10  practice" or a "personnel action" committed by the defendants ensures that those against

11  whom an administrative complaint is brought are agencies, officials, employees, or, in at

12  least some sense, agents of the federal government who took steps resulting in "personnel

13  action" against the plaintiff.  Damages caused by such federal employees or agencies

14  resulting in "personnel action" are thus subject to an effective, if not complete remedy in a

15  CSRA administrative process, because in such a process the claimant's employment

16  relationship and the persons who caused damage to it are under the control of the federal

17  government and/or the employing agency.  Other types of damage find no remedy in the

18  administrative processes provided by the CSRA.  The damage inflicted by such defendants

19  easily transcends, as it is alleged to have done here, the loss of a particular employment

20  relationship.

21        Defendants cite *United States v. Fausto*, 484 U.S. 439 (1988), and its progeny for the

22  proposition that there is no remedy for a wrong suffered by a federal employee if the CSRA

23  does not provide one.  But *Fausto* only applies in circumstances in which the CSRA

24  preempts a plaintiff's claim.  The claim in *Fausto* was only preempted because the act

25  complained of by Fausto constituted "personnel action" against him by his employing agency

26  and thus was covered by the CSRA.  Under such circumstances, the CSRA both clearly

27  applied and clearly precluded Fausto from obtaining review of the "personnel action" against

28  him because Fausto was a nonpreference eligible employee in an excepted service position.

Thus, the court held that no remedy, either administrative or otherwise, was available to the claimant.  Defendants have cited similar cases from lower courts that follow *Fausto* in this respect.  However, neither *Fausto*, nor any of its progeny suggest, as Defendants argue, that the scope of CSRA preemption should be extended beyond the applicability of the CSRA itself.

Because, under the circumstances presented here, the complained of acts constitute neither "prohibited personnel practices" nor "personnel actions," the CSRA does not preempt Gilding's Complaint.

## II.     The PMS Does Not Preempt Plaintiff's Claim.

NATCA further asserts that the grievance procedure outlined in the PMS is also applicable and provides Gilding with the exclusive venue in which to grieve the conduct of Defendants in this action.  The PMS grievance procedure is set forth in paragraphs four and five of chapter three of the PMS, and it explicitly limits the scope of the preemptive effect of the PMS grievance procedure.  According to the PMS, its grievance procedure is the "sole and exclusive method by which . . . employees can seek relief from the FAA, Department of Transportation, and/or the United States Government for issues related to the matters covered by this paragraph."[5]  PMS Chapter 3 ¶ 4 § (a).

Section (b) of paragraph four then specifies that the "matters covered by this paragraph include: "(i) adverse or disciplinary actions covered under agency wide orders or directives . . . and (ii) matters of personal concern or dissatisfaction to any employee that are subject to control of FAA management or any matter in which an employee alleges that coercion, reprisal, or retaliation have been practiced against him/her."

Defendants contend that Gilding's claim is subject to the PMS grievance procedure because it constitutes a matter "in which an employee alleges that coercion, reprisal, or retaliation have been practiced against him/her."  Defendant argues that this clause, unlike

---

[5]Two other administrative procedures are possibly applicable to specified claims of FAA employees, but neither of these change the preemptive scope of the PMS and neither is alleged to be applicable here.

1   its predecessor, is not limited to matters that are "subject to control of FAA management."
2   Thus, Defendants apparently argue that the FAA PMS grievance procedures extend to
3   persons and entities over which the FAA has no authority or control.  Such an interpretation
4   of this provision is implausible, and does not appear to be accepted by the FAA itself, as
5   evidenced by its indication to Gilding that no grievance procedure applied to his claim
6   against his co-employees. *See Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)
7   ("We must give substantial deference to an agency's interpretation of its own regulations.").
8       Even assuming, however, that the regulations did give the FAA administrative process
9   jurisdiction over persons and entities over which it otherwise has no authority, the
10  availability of the FAA grievance procedure would not preempt Plaintiff's state law claims.
11  As the PMS itself makes clear, the FAA grievance procedure is only exclusive for those
12  employees who assert claims against the FAA, the Department of Transportation, or the
13  United States Government.  Because Plaintiff's claims are not against any of these entities,
14  the FAA PMS is not the exclusive procedure by which Gilding must pursue his claims
15  against Defendants.  To be removed from state court, the federal remedy must "provide the
16  exclusive cause of action for the claim asserted." *Beneficial*, 539 U.S. at 10-11.  Thus, the
17  existence of the FAA administrative procedure does not bar Gilding's claims against these
18  Defendants, and Gilding's claims are not completely pre-empted by federal law.  Remand
19  to state court, then, is mandated.

20  ### ATTORNEYS' FEES

21      28 U.S.C. § 1447(C) authorizes the Court, in its order remanding the case to "require
22  payment of just costs and any actual expenses, including attorney fees, incurred as a result
23  of the removal."  Gilding requests such an award in this case.  The Court maintains
24  jurisdiction after the remand order to consider such requests. *See, e.g., Bryant v. Britt,* 420
25  F. 3d 161 (2nd Cir. 2005).  The Court shall consider Plaintiff's request upon his compliance
26  with local rule 54.2.  Therefore,

27      **IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand to State Court (Dkt.
28  #10) is **GRANTED**.

1    **IT IS FURTHER ORDERED** directing the Clerk of the Court to remand this matter
2  back to Maricopa County Superior Court.

3    **IT IS FURTHER ORDERED** that NATCA's First Motion to Dismiss Case (Dkt.
4  # 15) is **DENIED AS MOOT**.

5    **IT IS FURTHER ORDERED** that Plaintiff is directed to file a memorandum in
6  support of his request for attorneys' fees in compliance with LRCiv 54.2 **within 14 days** of
7  the date of this order.

8    DATED this 7th day of April, 2009.

9

10

11                              G. Murray Snow
                        United States District Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28